UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PENELOPE SEWALD,

Plaintiff,

vs.  Case No. 8:08-CV-2313-JDW-TBM

JOHN REISINGER,

Defendant.
_____/

ORDER

**BEFORE THE COURT** is the Report and Recommendation submitted by the Magistrate Judge recommending that Petitioner's Petition for the Return of the Child to Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent (Dkt. 1) be GRANTED. (Dkt. 9). Respondent has filed objections to the Report and Recommendation. (Dkts. 12). Petitioner has not filed a response and the time for doing so has expired. For the reasons set forth below, the Court finds that the Report and Recommendation should be adopted, confirmed, and approved in all respects.

*Standard of Review*

The District Court is required to "make a *de novo* determination of those portions of the magistrate's report or . . . recommendation to which objection is made." 28 U.S.C. § 636(b)(1). The District Court may "accept, reject or modify in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C).

*Discussion*

After conducting an evidentiary hearing on December 4, 2008, the Magistrate Judge issued

a thorough and well-reasoned Report and Recommendation. Respondent makes several objections to the Report and Recommendation. First, Respondent asserts that Germany is not in compliance with the Hague Convention and is therefore not entitled to comity. Second, Respondent asserts that the Magistrate erred in finding that Respondent accepted that the child's place of habitual residence is Germany. Third, Respondent asserts that the Magistrate erred in finding that Respondent failed to present clear and convincing evidence of a grave risk of psychological or physical harm to the child if returned to Germany. Finally, Respondent asserts that the Magistrate erred in finding that the return of the child to Germany would not be contrary to fundamental principles of human freedom. (Dkt. 12).

To establish wrongful removal or retention of a child under the Hague Convention, Petitioner must show by a preponderance of the evidence that (1) the child was a habitual resident of Germany immediately before retention in the United States, (2) the retention was in breach of Petitioner's custody rights under German law, and (3) Petitioner had been exercising her custody rights at the time of retention. Hague Convention, art. 3; *Ruiz v. Tenorio*, 392 F.3d 1247, 1251 (11th Cir. 2004). If Petitioner meets this burden, the child must be "promptly returned unless one of the narrow exceptions set forth in the Convention applies." *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) (quoting 42 U.S.C. § 11601(a)(4)).

In this case, Respondent argued that Petitioner could not establish that A.R.'s habitual residence is Germany. Further, Respondent argued that two exceptions under the Convention applied. First, Respondent argued that there was a grave risk that return of the child to Germany would expose the child to physical or psychological harm or otherwise place him in an intolerable situation. Convention, art. 13(b). Second, Respondent argued that the return of the child to Germany is not permitted by the fundamental principles of the United States for the protection of human rights

2

and fundamental fairness. Convention, art. 20.

## A.R.'s habitual residence immediately before retention

The evidence indicates that before A.R. was born, the parties intended to live in the United States. Petitioner confirmed that when she returned to the United States in May 2005, she intended to reconcile with Respondent. Petitioner and Respondent married in August 2005. They lived together in Respondent's house in Tampa until December 2005, when Petitioner returned to Germany, ostensibly for a short visit. However, Petitioner decided to stay in Germany and separate from Respondent. Five months later, A.R. was born. Notwithstanding, this Court agrees with the Magistrate Judge that Petitioner established by a preponderance of the evidence that A.R.'s habitual residence *immediately before retention* by Respondent, was in Germany.

Before their separation, the parties intended to reside in the United States. When, however, Petitioner returned to Germany in December 2005, they no longer shared a settled intent to reside in the United States. Petitioner decided to separate from Respondent and remain in Germany. The magistrate judge correctly found that "it is impossible to conclude that the parties' any longer had a shared settled intent with regards to their habitual residence (and therefore A.R."s habitual residence)." Significantly, what transpired between the parties after A.R. was born establishes, for purposes of the Convention, that A.R.'s habitual place of residence at the time he was retained in the United States by Respondent was Germany.

Immediately before his retention in the United States by Respondent in August 2008, A.R. was living in Germany with his mother and two half-brothers. As noted, A.R. was born in Germany and has lived there his entire life. Respondent was present for A.R.'s birth. Since then, Respondent has supported the child and his mother financially, including purchasing vehicles for Petitioner's use in Germany. Respondent participated in a visit to the child's doctor in Germany and assisted

Petitioner in finding a preschool for the child to attend in Germany, which they agreed on for the child's future enrollment. He has remained in regular contact with Petitioner and A.R. He has paid for Petitioner and A.R. to travel to the United States for visits. Since A.R. was born, the parties have visited together in Germany and in the United States. Indeed, in August 2008, Respondent purchased round trip tickets from Germany to the United States for Petitioner and her three sons, including a friend of the oldest son.

While Respondent argues that he did not have a settled intention for the child to habitually reside in Germany, the Court agrees with the Magistrate Judge's finding and conclusion that "the objective evidence reveals that over time, the parties' shared intention, absent a reconciliation, was that A.R.'s habitual residence was in Germany with his mother." Through his actions, Respondent came to accept Germany as the child's habitual residence. Accordingly, in August 2008, immediately before his retention in the United States by Respondent, A.R.'s habitual residence was in Germany.

## No exceptions under the Convention apply

The Court also agrees with the Magistrate Judge that Respondent has not shown by clear and convincing evidence that the child's return to Germany would expose him to a grave risk of physical or psychological harm or otherwise place him in an intolerable situation. Petitioner admits that she has experienced mental health problems and has taken medications to treat depression and stress. Petitioner also admits to a suicide attempt during a previous abusive relationship and to occasionally self-mutilating in the past. However, Respondent presented no evidence that Petitioner is currently engaging in behavior which is harmful to herself or that she has ever harmed her children. Absent specific evidence of severe child abuse or neglect, which Respondent has not presented, the grave risk of harm defense fails. *Lopez v. Alcala*, 547 F. Supp. 2d 1255, 1260 (M.D. Fla. 2008); *Jaet v. Siso*, No. 08-81232-CIV, 2009 WL 35270, at *7 (S.D. Fla. Jan. 5, 2009). Accordingly, Respondent

4

has failed to establish by clear and convincing evidence that return of the child to Germany would expose him to a grave risk of harm. *Cf. Baran v. Beaty*, 526 F.3d 1340 (11th Cir. 2008).

Additionally, Respondent's contentions that the return of the child is not permitted by fundamental principles for the protection of human rights and fundamental fairness, and that the Hague Convention does not apply because Germany is not in compliance with the treaty, are rejected. Respondent contends that the Magistrate Judge, in considering Respondent's defense under Article 20, failed to attribute evidentiary value to the fact that the German court in the German divorce proceeding entered an ex parte order that Respondent's retention of the child is illegal without affording Respondent due process. The Report and Recommendation states that Respondent's "only support" for his contention that returning the child to Germany is the United States Department of State *Report on Compliance with the Hague Convention* dated April 2008. Aside from the ex parte order and the Department of State Report, Respondent points to no other evidence in support of its argument that return of the child to Germany is contrary to fundamental principles for the protection of human rights and fundamental freedoms. Article 20 is a "seldom-cited and somewhat obscure provision . . . meant to be 'restrictively interpreted and applied . . . on the rare occasion that return of a child would utterly shock the conscience of the court or offend all notions of due process." *Hazbun Escaf v. Rodriguez*, 200 F. Supp. 2d 603, 614 (E.D. Va. 2002) (quoting State Department Legal Analysis at 10,510); *see also In re Hague Child Abduction Application*, No. 08-2030-CM, 2008 WL 913325, at *14 (D. Kan. March 17, 2008). Respondent has not presented any evidence which "utterly shocks the conscience" of the Court so as to deny the petition. *See Aldinger v. Segler*, 263 F. Supp. 2d 284, 290 (D.P.R. 20003) (finding no risk to human rights or fundamental freedoms from return of respondent and child to Germany). As to Respondent's assertion that Germany is not in compliance with the Hague Convention and should

5

not be granted comity, Respondent offers no authority to support his contention that the treaty, to which Germany is a signatory, is not applicable. Moreover, although the Department of State Report names Germany as a country demonstrating patterns of noncompliance, it has not deemed Germany to be non-compliant.

Finally, in his amended objections (Dkt. 13), Respondent argues that because A.R. remains in the custody of Petitioner, there has been no "retention" within the meaning of the Convention, citing *Pileage v. McConnell*, 516 F.3d 1282 (11th Cir. 2008). It does not appear that Respondent made this argument or cited *Pileage* in his arguments to the magistrate judge.[1] Nevertheless, the Court has considered *Pileage* and finds it to be distinguishable from the instant case.

The petitioner in *Pileage*, who was from the Netherlands, contended that an Alabama state court *ne exeat* order prohibiting her from removing the child from the court's jurisdiction constituted a "wrongful retention" within the Convention, since she could not return to the Netherlands with the child without violating the *ne exeat* order. The Eleventh Circuit concluded that there was no "retention" under the Convention, reasoning that in such cases, "where the child remains in the physical care of the petitioner, it is impossible to 'return the child directly to the applicant.'" 516 F. 3d at 1289.

The facts of the instant case are materially distinguishable. Here, just before Petitioner and A.R. were to return to Germany, Respondent surreptitiously took A.R.'s passport and refused to return it to Petitioner, thereby precluding A.R.'s return to Germany. By his actions, Respondent effectively caused the "wrongful retention" of A.R. in the United States, thereby preventing the return of A.R. to his mother for the return trip to Germany, A.R.'s habitual residence. Under these unique circumstances, this court finds that there has been a "wrongful retention" within the

---

[1] Respondent's amended objections are not filed within the time period prescribed by Local Rule 6.02.

Convention. It was Respondent's actions, not a state court *ne exeat* order, which caused the wrongful retention of A.R. in the United States.

## Conclusion

After careful consideration of the Report and Recommendation and Respondent's objections, in conjunction with an independent examination of the file, the Court is of the opinion that the Report and Recommendation should be adopted, confirmed, and approved in all respects. Accordingly, it is **ORDERED AND ADJUDGED**:

1) The Report and Recommendation (Dkt. 9) is adopted, confirmed, and approved in all respects and is made a part of this order for all purposes, including appellate review.

2) Petitioner's Petition for the Return of the Child to Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent (Dkt. 1) is **GRANTED**.

3) The Clerk is directed to return the child's passport to Petitioner.[2]

4) Petitioner shall file a separate motion for fees and costs in accordance with pursuant to Local Rule 4.18 and Rule 54(d), Fed.R.Civ.P.

4) The Clerk is directed to close this case.

**DONE AND ORDERED** in Tampa, Florida, on this 20th day of January, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[2] During a status conference held by the Magistrate Judge on November 26, 2008, Respondent surrendered the child's passport. The passport is being held in the court registry.